Thank you, Your Honors, and may it please the Court. In finding no motivation to combine either... Mr. Sears, I just want to go back to some things you said in your briefs in this case. On page 2 of the Gray Brief, you say that Oyster has asserted the 952 patent against over nine different companies over the past four years. What's the status of those cases? Your Honor, I believe for the 952 patent, those cases are all concluded. I don't think there's, unlike the 898 patent in the prior case, I don't think that there's an existing case with the 952 patent. Okay. On page 4 of the brief, you say Oyster's strategy is to seek dismissal of this appeal on standing grounds and then turn around and sue appellant. Oyster's counsel told you that? No, Your Honor. Again, we were saying what our inference was. I'm making a point about not speculating. Go ahead. Well taken, Your Honor. Thank you. Unless there are any other questions about standing, proceeding to the merits, with the board finding that there's no motivation to combine either Kaneda or Bausch with Schneider, the board applied an improper obvious analysis that limited Schneider to one aspect of its invention and provided no rationale for how that obviated our evidence of motivation to combine. So again, taking a step back, Kaneda and Bausch disclosed all the elements of the challenge claim except for the control circuitry, including a digital analog converter for altering the phase of the phase modulator. Now in the petition, we provided evidence that a person of ordinary skill and the art would be motivated to use Schneider's MZ modulator and control algorithm to implement the phase modulator that's disclosed in Kaneda and Bausch. In particular, the benefits of... Yes, Your Honor. Judge Wallach, on page 25 of the gray brief, you say, and I'm quoting, even if Schneider's control algorithm would not run while converting intensity modulation values to phase modulation values, with Kaneda and Bausch, I'm adding a little bit in there, petitioner showed that a person having ordinary skill in the art would have combined the references. Did Schneider's control algorithm run? Your Honor, what Schneider says is, Schneider doesn't ever say that don't ever operate the control algorithm unless you are also transmitting data at the same time. In fact, Schneider teaches running its control algorithm and then powering down. Once you get the settled values, you power down for extended periods of time. So it clearly contemplates that you're going to be transmitting data and not running the control algorithm. What the board focused on, and again, this is to take a step back, this is not a claimed limitation of the challenge claim here, but what the board said was, you know, even though there's no dispute that you could use Schneider's control algorithm and its MV modulator for phase modulation, you could do that. No dispute there. A board didn't dispute that you still get the benefits of compensating for that. But the board said when using it as a phase modulator, Schneider's control algorithm would not run during data transmission. And this conflicted with this one aspect of Schneider's invention. And in making that finding, what they were relying on was a statement in Schneider's provisional application. And that statement says, one aspect of this invention is that the algorithm for non-disruptively optimizing the bias set point in a system where there is normal data flow through the advice. So Schneider doesn't say never, ever run the control algorithm unless you're also transmitting data. What it does say is you want to be non-disruptive. That's what it says in its provisional. So our point is that the board erred for three reasons. One, Schneider's not limited to operating its control algorithm during data transmission. But even if you find that it is limited to that, then what you're talking about is one aspect of Schneider's invention, as its provisional says. So it's error not to consider Schneider's other teachings, including its express teachings about the stability benefits you would get by using its control algorithm. So yes, 48 in the blue brief, footnote 10. You say, during oral argument one board member's questioning reflected in an evaluation of Schneider in comparison to a hypothetical phase modulation reference that might be more desirable. What's the purpose of that footnote? What does it prove? Your honor, what we, again, what we were saying is there's no dispute you could use this for phase modulation and you'd get those benefits. You have to do a simple mathematical conversion in order to do that. And in which time point data would not run for a very brief period of time. But you'd still get all these benefits. And so what the point of the footnote is this court has made clear that when you're looking at an obviousness combination, you're not looking for the most desirable combination or the most preferable one. And even if there is some conflict with one aspect of the prior art reference that doesn't necessarily obviate motivation to combine. So this is just the point that it looks like what the board was doing was saying that it looks like there's this conflict with this non-claimed feature. Yes, your honor. It seemed to me you were relying for motivation to combine on Dr. Blumenthal on page 50. He's your expert and you say he's substantiated that a person having ordinary skill in the art would have been motivated to combine. Was there any reason the board had to believe his statement? No, your honor. Of course the board can weigh the testimony. Our point here is that we had submitted motivation to combine based on the specification as well. The specification says that Schneider, the specification of Schneider says you get these stability benefits. So there's no showing, the board never explained why this purported conflict with one aspect of Schneider's invention would suddenly obviate all of the other benefits that Schneider itself expressly discloses. There's no showing that any purported disruption overcomes these stability benefits. There's no showing or evidence that the 952 is concerned with this functionality. It didn't claim it. All it says is we're claiming a digital analog converter for use with a phage modulator. So, you know, even if the board found that this was some sort of important feature, even though it's not claimed, they should have weighed this against the stability benefits of Schneider and explained why this non-simultaneous operation would somehow outweigh those benefits. But when you look at the final decision, there's nothing there about why it would outweigh the benefits you get by using Schneider's control algorithm for phage modulation. You say at page 53 that it's undisputed that a person having ordinary skill in the art could have modified Schneider's control algorithm to modulate phage with a reasonable expectation of success. How is that undisputed? If the board made no findings regarding a reasonable expectation of success, an oyster question whether your combination would result in a reasonable expectation of success, how is that undisputed? Your Honor, if you look at Appendix 37, you'll see on the first paragraph in the second sentence, this is the board's finding saying petitioner has shown that a person or his gal art could have modified Schneider's control algorithm to operate with Canadian phase modulation. So it says, and then if you look at Appendix Appendix 32, the board lists the facts that it determined were undisputed. And number two on that is an MZ modulator could be used to modulate either intensity or phase. So the board is saying, yes, you, okay, you've shown that a person or his gal art could have used Schneider to phase modulate, but there's this one aspect of Schneider that you, that's not satisfied in the combination of running the control algorithm while you're transmitting data. So we're looking at Schneider and we're saying there's a conflict there. So that's why we've, we've decided you haven't shown motivation combined, but the board again, never went back and said, yeah, there's this conflict and here's why it outweighs the stability benefits you're going to get by using Schneider's control algorithm. It never explained why that is. It just disregarded or obviated the motivation combined. We present as disclosed in Schneider in favor of this non claimed feature of one aspect of Schneider's invention. And so that's why that's what we're saying, your honors. Okay. Your time's up if you want to, or what, let me put it this way. You're into your rebuttal time. Okay. Your honors, if there's no more questions, I'll reserve the rest of my time. Counselor, this is Judge Stoll. I have a question. Why I read this board's decision on page 837 differently than you, I thought that what they were saying was at most you've shown that one could have made the modification you proposed, but not that one would have, and that they were particularly relying on expert testimony to support their conclusion, which is a factual conclusion. Why wasn't their reliance on the expert testimony contrary to your experts testimony sufficient? Because your honors, they never, the board never addressed the intrinsic evidence or the evidence that's directly in Schneider that says this control algorithm will give you these stability benefits. And in the light of the fact that it's undisputed that you could use it with the phase modulator of Kaneda and Bausch, what we're saying is the board essentially took our, that motivation combined off the table and said, in light of this non-claim feature, why would you have used it? But the board never addressed the motivation combined we did present. It simply disregarded it without weighing the benefits versus what it saw to be, you know, based on its review of the expert testimony. What it thought to be a problem in conflict with this one aspect of Schneider. We're saying the board did not err by not giving due consideration to the other teachings of Schneider about stability benefits and by explaining why those suddenly are lost because of this non-claimed feature of Schneider. And if there are no more questions, I'll, I'll reserve the rest of my time. Thank you, your honors. Good morning, your honor. May it please the court. Once again, your honor, the board's decision affirming the patentability of the challenge claims is not tainted by any legal error. And once again, it's supported by substantial evidence. Your honor, I'd like to begin by talking about Schneider. Schneider discloses a closed loop algorithm for adjusting the bias and gain for a mock sender modulator operating in an intensity mode. Mr. Helge. Yes, your honor. Can you just speak to your opposing counsel's argument this morning that the board failed to weigh the stability benefits offered by Schneider scheme in against whatever problems the board saw in making the combination between Schneider and either of the primary references? Certainly, your honor. Well, your honor, I think the board absolutely recognized what Schneider teaches as advantages but, but understood that those advantages related to environmental stability and tuning were uniquely directed to the exploitation of the transfer curve for an intensity or for a mock sender modulator operating in the intensity mode. Really what, what opposing counsel is saying when they say that the board didn't give that evidence any credit, what they're really asking this court to do is to not defer to the board's fact finding, which, which considered all the reference or the reference as a whole. You know, the ref, when Schneider talks about a closed loop system and operating with intensity modulation those factors are what actually what gives Schneider the advantages that, that petitioners were trying to achieve and incorporate into the vouching Canada references. But as your honors can see, once we get into the reply, which this, this combination in this discussion wasn't included in the petition. Once we get into the reply, we see the degree to which Schneider has to in effect be broken. It has to be undone. All the, all the features of Schneider that give it those advantages that the, that, that petitioner argued for and the board recognized have to be undone because Schneider according to petitioner's replies has to be shut up. There's actually, there's a sequence of events that petitioner came forward with in their replies as how Schneider could feasibly be operated. Now judge Wallach was directly on point in terms of what petitioner said or what momentum said in their, in their brief, namely that there was a undisputed finding about reasonable expectation of success. And in fact, there, there is a dispute on that point as as, as Oyster raised in its red brief at page 56 in the footnotes. In fact, Oyster did raise questions of whether this modification, this extensive set of tests that petitioner would have to take to get Schneider to possibly to operate with vouching Canada. There were questions whether it would actually be effective again, because Schneider is directed towards the intensity modulation mode of a mock center modulator, getting it to work with phase modulation is, is tricky. And what petitioners proposed for example, the conversion of the bias point simply by multiplying by two, everything that Schneider is designed to do is designed to recognize that a mock center that it's working with is not an ideal mock center. It's not one that is operating in perfect conditions and is entirely stable and never changes. In fact, that's the whole purpose of the algorithm. So when they simply take the output from, from, from a control algorithm, the settled points for bias and gain that have been, you know, run while it's in its intensity modulation mode, once they multiply it by two, in essence, they're trying to convert Schneider's, you know, recognition for environmental changes and stability benefits. And they're undoing those because they're, they're simply applying a mathematical number that, that may or may not work. In fact, as, as oyster showed in some of its papers to the board, simply multiplying by two could actually increase the error rather than reduce it, because we're talking about a curve and shifting of a curve and that sort of thing, your honor, but I, your honors don't need to reach that question about the reasonable expectation of success because the board recognized. And, and in fact, here in, in its opening brief, Lumentum admits that it was not clear at minimum, it was not clear in its petition about whether the data would, would be run or stopped when Schneider is combined with Bausch and Kaneda for transmitting phase modulated data. That information only came out in reply. And in fact, one, one detail here that's important, and we pointed this out in our red brief at the bottom of page 42 and then top of page 43, after petitioners filed their petition and we were able to depose Dr. Blumenthal at appendix pages 27 and 11 and 27, 14, Dr. Blumenthal said that he hadn't gone through the process of figuring out how to make Schneider work with Bausch and Kaneda. He hadn't done what he called inventive work. So that inventive work only comes up for the first time in reply. As a separate aside here, very quickly, Your Honor, much of the, well, I shouldn't say much. Some of the blue brief does raise the issue that the board failed to consider petitioners reply theories, and that's simply incorrect. The pages that the, or the discussion that Lumentum provides about their replies were fully considered. In fact, the board's findings as to this, this extensive list of changes that would have to occur to Schneider, the board's list of findings regarding those is premised on what petitioner first raised in its reply. And we addressed that issue at our red brief pages 60 to 62. There is no argument that petitioners or Lumentum presented first on the reply that the board failed to consider. One other point here very quickly, Your Honor, is simply Lumentum in their brief, they do not give any deference to the board's fact finding. I believe perhaps it was Judge Chen who suggested that why isn't Oyster's evidence enough? And in fact, it is. The board had substantial evidence to reach its findings that a person of ordinary skill in the art would not have combined Schneider's closed loop intensity modulation scheme into Bausch and Kaneda's phased modulation schemes, absent impermissible hindsight. That finding is supported by substantial evidence and the board's legal conclusions were not erroneous. They were performed properly and if Your Honors have no other questions, I will feed the remainder of my time. Well, it appears there are no other questions. So let's hear the rebuttal. Thank you, Your Honors. Just on the point about the arguments made in the petition and the replies, the petition was very thorough, supported by pages of expert testimony where Dr. Blumenthal walked through how you would use this with phased modulation. And at appendixes 1045 to 1046, this is in paragraphs 160 to 162 of his declaration, he tells you exactly how you do it. You run Schneider's control algorithm and the bias subroutine finds the peak and the gain subroutine finds the peak to null. And then in 162, he goes on and say how you would do this, how you would then convert it to phased modulation as you would essentially apply twice the voltage, twice the swing. And so when they said in their patent owner response, well, you don't have nine simultaneous operation, the replies provided further context over why this would not be disruptive, why it was just a simple calculation. And just for context, you know, we're talking about very, very, a very minute millisecond level period of time where you're doing the conversion. Now I know that there was the point about the conflicting expert testimony. Our point is that even if the board decided that, yes, I don't believe petitioners expert, I think that this would be non-disruptive. I think it wouldn't comport with this one aspect of Schneider. And so I don't, I don't, I'm not going to credit that evidence, even if that's supported then you still have this situation where you're, there's a conflict with what Schneider's saying, one of his benefits, there's no evaluation of why this millisecond delay would take away the stability benefits. What, what are, what we showed is you could run this, you could power down the control algorithm and then you keep going and you've got this, this, this, these stability benefits on the point about you know, the, the, that this would be an undoing of Schneider. And our expert hadn't gone through the, the inventive work again, what the board wasn't relying on any of those findings. It just pointed to the non-simultaneous operation, that one aspect that was in Schneider's provisional and that's what it based its decision on. So you won't find any discussion about ideal conversion for an ideal modular or anything like that in the board written decision. The inventive work point is this is something that's again, unrelated to the board's decision. What happened was they said, well, you haven't shown that you're actually doing the, the you're running the control algorithm while you're phase modulating. And we said, you don't have to do that. You can do the conversion to phase modulation and then you apply it and your phase modulating with those stability benefits. So you don't have to do it at the same time. And Schneider says, you don't have to run your control algorithm at the same time. So it was consistent with Schneider. Okay. Counsel, wrap it up. I'm happy to take any questions from, from, from your honors. Otherwise I will, I will rest. Okay. We're done. Thank you, your honors.